AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO

2015 NOV 13  AM 8:40

CLERK-LAS CRUCES

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>701 Tafoya Lane, Socorro, New Mexico | )<br>)<br>)  Case No.  15 MR 736<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

701 Tafoya Lane, Socorro, NM, more fully described in Attachment A, which is attached and fully incorporated herein.

located in the _____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846, 841 | Conspiracy, Possession With Intent to Distribute Methamphetamine |

The application is based on these facts:

See Attachment C, which is attached and fully incorporated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

William Kickpatrick, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/13/15

_____
*Judge's signature*

City and state: Las Cruces, New Mexico

Stephan M. Vidmar, United States Magistrate Judge
*Printed name and title*

**Attachment A**
**Premises to Be Searched**

**701 Tafoya Lane, Socorro County, Socorro, NM.**

The premise to be searched is a single-family dwelling located at 701 Tafoya Lane, Socorro, NM, 87801. The residence is located approximately $1/8^{th}$ mile west of the intersection of Hope Farm Road (NM Highway 439) and Tafoya Lane, after crossing a canal. The residence is located on Tafoya Lane, a privately owned dirt road. The residence is beige in color with a red pitched metal roof. The front door is a dark metal door, which faces south and is located under a porch addition also with a red metal roof. An overhang driveway is attached to the west side of the residence. The front yard has a chain linked fence with a cement walkway leading to the front door. A large covered metal shed with siding for an RV is located south of the residence. On the property in the back yard is a large metal storage along with numerous small storage sheds and used appliances.

To include all outbuildings, vehicles and appurtenances on the property within the curtilage of the residence.

Pictures of the Subject Premises are attached and incorporated herein.













## ATTACHMENT B

## ITEMS TO BE SEIZED

All evidence of violations of 21 USC §§ 841 and 846, , including the following items:

a. Controlled substances, including methamphetamine; and drug paraphernalia and packaging materials, including scales, plastic baggies, and tape.

b. Firearms and ammunition.

c. Records, receipts, notes, ledgers and other documents relating to transporting, ordering, purchasing, manufacturing, storing and/or distributing controlled substances, stored in any form, including electronic form.

d. Financial documents, including credit card statements, tax returns, safe deposit records, safe deposit keys, bank records, bank statements, money orders, Western Union Money Gram or other currency transfer receipts, checking account records, cashier's checks, passbooks and other items evidencing the obtainment, concealment and/or expenditure of money, stored in any form, including electronic form.

e. Records, including address and telephone books (electronic or otherwise), telephone bills, cellular telephones, pagers, airline tickets, rental car records, storage unit rental records, false identification, other forms of identification, vehicle titles, vehicle registrations, records showing occupancy of the premises, utility bills, receipts showing the purchase of chemicals and/or motel records, stored in any form, including electronic form.

f. Proceeds of violations of 21 USC §§ 841 and 846, including currency, jewelry, vehicles and other assets or financial records related thereto.

g. Photographs and/or videotapes including photographs and/or video tapes of coconspirators, assets and/or controlled substances, stored in any form, including electronic form.

h. Cellular telephones and their contents, including phone book or contacts list, call history, text messaging, audio/video files, photographs, and any other material stored on the telephones that is related to the above listed offenses.

**ATTACHMENT C**

**AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT**

William Kirkpatrick, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, deposes and states:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a DEA Special Agent since 1996. During my career, I have conducted hundreds of criminal investigations concerning violations of the Controlled Substances Act, and have received ongoing training in conducting such investigations.

2. My experience as a narcotics agent includes, but is not limited to: conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, and analysis of data derived from the use of pen registers, trap and traces, and wiretaps.

3. This Affidavit is submitted in support of an order authorizing the entry into the single family residence at 701 Tafoya Lane, Socorro, New Mexico, ("Subject Premises"), more fully described below and in Attachment A to the search warrant application, for the purposes of seizing and searching the items described in Attachment B to the search warrant application.

4. Through my training and experience, I know the following:

    a. Narcotics traffickers commonly keep records, receipts, notes, ledgers, and other papers relating to the transportation, storage, purchase, and distribution of controlled substances in their residences. I have personally been present at the execution of search

warrants where records related to drug trafficking were seized and the records were at least one year old.

b. Narcotics traffickers often amass large amounts of profits derived from their illegal narcotics trafficking activities. Documents and other records pertaining to assets which are proceeds of the narcotics trafficking described herein would constitute evidence of the same narcotics trafficking.

c. Narcotic traffickers often maintain large amounts of U.S. currency in their residences that were derived from illegal activities.

d. Narcotic traffickers often convert their illegal profits into other assets, such as stocks, bonds, precious metals, jewelry, real estate, vehicles and other assets. The acquisition of such assets, which are the proceeds of narcotics transactions, and the changes of one form of asset to another, almost invariably generates documents evidencing such activity.

e. Narcotic traffickers often maintain ledgers, account books and other papers detailing the receipt, storage, sale and distribution of narcotics. These ledgers often contain amounts of drugs distributed and accounting of payments made and received.

f. Narcotic traffickers often maintain phone books, address books and other papers containing names, telephone numbers, and addresses of suppliers and purchasers of narcotics. Narcotics traffickers will often write these documents in code and they maintain documents containing the key to their codes.

g. Narcotic traffickers also often maintain documents or receipts for various services, such as bank statements, telephone bills, utility bills, vehicle repair, consumer goods purchases, all evidencing the disposition of illegal profits, the existence of "stash

houses" where drugs are stored and the existence of other assets obtained through the proceeds of their narcotics trafficking. Narcotics traffickers often maintain various documents evidencing ownership of assets such as real estate deeds, vehicle titles, and insurance policies.

h. Narcotic trafficking is a "for profit business" and, as such, traffickers must maintain the types of documents described above so as to determine profitability and to track debts owed by and to the trafficker.

i. Narcotic traffickers often keep photographs and videos of themselves and their co-conspirators, narcotics and their illegal profits.

j. Narcotic traffickers often maintain safe deposit boxes where they store narcotics, U.S. currency and other documents evidencing their narcotics trafficking. It is common knowledge that safe deposit boxes require the owner to have a key to the safe deposit box.

k. Narcotic traffickers often maintain firearms and ammunition to protect their narcotics and their profits from theft by other narcotics traffickers.

l. Narcotic traffickers often store narcotics as well as drug paraphernalia and packing materials in their residences and vehicles for ready access.

m. Narcotics traffickers often maintain one or more cellular or "smart" telephones which contain information relating to their drug trafficking activities. That information includes, but is not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, and photographs or video recordings of themselves, their co-conspirators and their narcotics.

n. Narcotic traffickers often maintain the above described items and documents in their primary residence or place of business so as to afford them ready access to those items.

o. Narcotic traffickers often place ownership of vehicles, real estate, telephones and other assets in nominee names and register utility services in nominee names so as to avoid law enforcement detection.

p. Narcotics traffickers often go to great lengths, including constructing hidden compartments, to conceal narcotics within vehicles or other conveyances for the purposes of transporting narcotics from one location to another for distribution without detection from law enforcement.

## Subject Premises

5. This Affidavit seeks issuance of a search warrant allowing Agents to enter and conduct a search of the Subject Premises more fully described in Attachment A.

## Probable Cause

6. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Facts presented in this Affidavit are based on my knowledge, observations, and direct participation in this investigation, as well as through conversations with other agents and/or persons involved in the investigation, and through the review of reports, and other documentation generated during the course of this investigation.

7. On or about October 6, 2015, a BIA undercover agent (UC) negotiated with Robin Lee Lovelace for the purchase of eight ounces of methamphetamine. Lovelace and the UC agreed on a price of $6,500 for the eight ounces of methamphetamine. In addition, the UC and Lovelace discussed the purchase of an additional pound of methamphetamine, and the

UC asked Lovelace if she would introduce the UC to her source of supply. Lovelace agreed and later told the UC that she contacted the source of supply and provided "him" with the UC's cellular telephone number. Lovelace also told the UC that "Carlos" was the source of supply's name.

8. On October 7, 2015, the UC contacted Lovelace and the two agreed to meet on Friday October 9, 2015, to conduct the eight-ounce methamphetamine transaction. The UC told Lovelace that he could bring $5,000 to Lovelace for the methamphetamine and would provide $1,500 to Lovelace on a later date. Lovelace agreed and asked the UC to meet her at her residence at 17 Heather Lane in Alamogordo, New Mexico.

9. On October 7, 2015, the UC began communicating with "Carlos," later identified as Carlos Tafoya Jr., to negotiate the purchase of one pound of methamphetamine from Tafoya.

10. On October 9, 2015, the UC met with Lovelace at her residence located at 17 Heather Lane in Alamogordo, NM, and purchased approximately eight ounces of methamphetamine from Lovelace for $5,000.

11. The substance purchased from Lovelace on October 9, 2015, was submitted to the DEA South Central Regional Laboratory (SCRL) for analysis. The SCRL confirmed that the substance was 212 net grams of pure methamphetamine.

12. On October 10, 2015, the UC contacted Tafoya, who quoted the UC the price of $8,000 for the pound of methamphetamine. The two agreed to meet in Socorro, NM, on Thursday October 15, 2015.

13. On October 15, 2015, two undercover agents met with Lovelace at the McDonald's in Socorro, New Mexico, where the UC paid Lovelace the $1,500 the UC owed from the October 9, 2015, purchase of methamphetamine. Lovelace asked the undercover agents to

follow her to a residence on Giles Lane in Socorro, NM, where Tafoya wanted to meet them. Agents on surveillance observed Tafoya depart his place of employment in Socorro, NM, in a grey Nissan Maxima with a NM license plate and travel to the Subject Premises. After he arrived at the Subject Premises, Tafoya entered the carport next to the residence and then left the residence driving an off-road all-terrain vehicle. Tafoya drove the all-terrain vehicle along the ditch bank to the address on Giles where he met with the undercover agents outside the residence and provided them with the methamphetamine. The undercover agents then handed Tafoya the $8,000 in a McDonald's bag. Tafoya then departed the area on the off-road all-terrain vehicle. Tafoya returned to the Subject Premises, where he entered a shed before departing the residence in the Nissan Maxima. Tafoya then returned to work.

14. The substance purchased by the undercover agents on October 15, 2015, was subsequently submitted to the South Central Regional Laboratory (SCRL) for analysis. The SCRL confirmed that the substance was 364.2 net grams of pure methamphetamine.

### Identification of Subject Premises

15. On October 15, 2015, agents conducted physical surveillance of Tafoya prior to and after the meeting with undercover agents. Prior to the meet, Tafoya drove from his place of employment in Socorro, NM, to the Subject Premises where he parked his vehicle and then departed on an all-terrain vehicle to an address off Giles Lane where he conducted the drug transaction. Tafoya then returned to the Subject Premises where he entered a shed on the property before departing the residence in his vehicle. Tafoya then returned to work.

16. Tafoya is currently on federal supervised release, and Tafoya's probation officer confirmed that Tafoya is residing at 701 Tafoya Lane in Socorro, NM.

17. On November 10, 2015, agents confirmed with the Socorro Police Department that Tafoya is residing at the Subject Premises.

## Conclusion

18. Based on the above information, there is probable cause to believe that Tafoya is involved in the trafficking of methamphetamine, and that evidence and/or the fruits and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 are located at the Subject Premises. Therefore, this Affiant respectfully requests that this Court issue a search warrant for the Subject Premises, more particularly described in Attachment A, authorizing the seizure of all items described in Attachment B.

19. This Affidavit has been reviewed by Assistant United States Attorney Terri Abernathy of the District of New Mexico.

Respectfully submitted,

William Kirkpatrick
DEA Special Agent

Subscribed and sworn before me on November 13, 2015:

Stephan M. Vidmar
United States Magistrate Judge